## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAMES CALHOUN-EL, # 160083   *
  Plaintiff
           *

  v.            CIVIL ACTION NO RDB-13-3868
           *

WARDEN FRANK BISHOP, et al
  Defendants     *
         ******

## MEMORANDUM OPINION

Pending is James Calhoun-El's ("Calhoun-El") Complaint as amended, filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 24). Defendants, former Warden of Western Correctional Institution (WCI) Frank B. Bishop, Jr., Chief of Security Michael P. Thomas, Lt. Phillip D. Merling, and C.O. II Gerald L. Wilson, Jr., filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with affidavits and verified exhibits. (ECF No. 17).[1] The Court granted Defendants [2] Lt. Rodney O. Likin, C.O. II Cletus C. Hill, and C.O. II Jeremiah L. Fontaine's, subsequent request to join the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF Nos. 35, 39). [3] Calhoun-El has filed an opposition in reply with declarations and

---

[1] Frank Bishop, Jr. is presently Warden at North Branch Correctional Institution ("NBCI").

[2] Calhoun-El also named "Six Unknown Officers" as Defendants. Service was not accepted for the unknown officers. The Court granted Calhoun-El's later request to amend the Complaint to add Officers Fountain, Hill and Hatrat as Defendants (ECF 24, 26), and service was accepted on behalf of Fountain and Hill. Calhoun-El subsequently submitted correspondence indicating that Officer Hatrat's correct name is Officer Hendricks and seeking to add Officer Logson as a party defendant. (ECF 38). This Court will grant Calhoun-El's request to change Officer Hatrat's surname to Hendricks and add Officer Logson, as a party defendant. Service will proceed on both individuals by separate Order to follow. It should be noted that Calhoun-El calls Officer Fontaine " Officer Fountain" in his pleadings.

[3] Defendants' footnote indicating "[u]ndersigned counsel does not represent Lt. Rodney O. Likin who is currently assigned to the Department of Public Safety and Correctional Services' (DPSCS') Internal Investigative Unit (IIU)" directly contradicts Defendants' earlier filed Motion to Join. (ECF 17, n. 3; ECF 35). By separate Order, counsel shall be directed to provide clarification.

exhibits. (ECF Nos. 40, 41).[4] No hearing is presently needed. *See* Local Rule 106.5 (D. Md. 2014).

For reasons to follow, the claims against Defendants Bishop and Thomas ARE DISMISSED WITH PREJUDICE, and Bishop and Thomas ARE DISMISSED as party defendants. Plaintiff's due process, verbal harassment, and imminent danger of harm claims ARE DISMISSED WITH PREJUDICE.

Summary judgment IS GRANTED in part and IS DENIED in part. Specifically, summary judgment IS GRANTED in favor of all remaining Defendants as to Plaintiff's claims of inadequate medical care and conditions of confinement. Summary judgment IS DENIED WITHOUT PREJUDICE subject to renewal within forty days as to Plaintiff's claims of excessive force.

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Calhoun-El, an inmate at WCI, is raising claims of excessive force, denial of necessary medical treatment, unconditional conditions of confinement, verbal harassment and denial of due process. He also claims he was subjected to verbal harassment. Calhoun-El maintains that he is in "imminent danger of serious physical injury," [5] and is requesting compensatory and punitive damages of $50,000 and

---

[4] Calhoun-El was served with notice of Defendants' Motion pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[5] Plaintiff alleges no facts to substantiate his claim that he is in imminent danger of serious physical injury as his allegations relate only to past events. Accordingly, this claim will be dismissed with prejudice.

declactory relief. (ECF No. 1). [6]

## I.    PLAINTIFF'S ALLEGATIONS

Calhoun-El's claims arise from a use of force incident that occurred upon his transfer to WCI from North Branch Correctional Institution (NBCI) on August 8, 2013, and two alleged assaults that followed, the first on August 8, 2014, and the second on August 10, 2014. Calhoun-El faults Security Chief Thomas for ordering, and Warden Bishop for approving, his placement on segregation unit #4.

In his affidavit, Calhoun-El states the transportation officers put three-piece restraints on all the transferring inmates except for him. (ECF 41, Ex. 1, p. 2). He explains that his left arm was cuffed only with a black box, his right arm was free so that he could use his cane, and he was not placed in leg restraints. *Id.* Calhoun-El attests the transportation officers ordered him to exit the transport van without his cane. *Id.*

When Calhoun-El arrived at WCI, an unidentified transportation officer removed Calhoun-El's restraints, and Officer Wilson proceeded to order Calhoun-El to turn around so that handcuffs could be applied from behind. (ECF 1, p. 7, ¶ 7). Calhoun-El states that he tried to explain he has medical paperwork to use a cane. (ECF No. 1, p 18). Before Calhoun-El could show the officer the paperwork, Wilson administered one burst of pepper spray directly to Calhoun-El's face. (ECF 41, p. 3). Calhoun-El attests that he never received a direct order from Wilson. *Id.* Calhoun-El fell to the floor, was handcuffed behind his back, and then "dragged by 6 unknown officers passing a shower [sic], then taken to an area without cameras." (ECF No. 1, p. 7). There the officers allegedly administered two additional bursts of pepper spray directly into

---

[6] Calhoun-El, a frequent litigator in this Court, seems to assume that he has been awarded three strikes under 28 U.S.C.§ 1915(g). (ECF No. 1, p 14 ¶ 35). He has been awarded one strike to date. In *Calhoun-El v. Shearin*, 544 Fed. Appx. 235 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit, affirmed this Court's order in *Calhoun-El v. Shearin*, Civil Action No. RDB-13-2056 (D. Md. July 29, 2013), dismissing his complaint and deeming that case a "strike" under 28 U.S.C. § 1915(g).

Calhoun-El's chest, and beat him on the stomach, chest, and back while he was handcuffed from behind. *Id.* at 8.

Calhoun-El alleges he was slammed into a "cage"[7] without proper ventilation or decontamination for over twenty-five minutes.[8] He pleaded for medical help because he was gagging, unable to see, and in intense pain. *Id.* at 9.

Calhoun-El was taken to the medical unit. He complains Nurse Dennis Martin told him "They got you good," and failed to clean the pepper spray from his eyes and body. (ECF 41, p. 3). Calhoun-El was taken for a shower where, he complains the water was so hot that it worsened the burning caused by the pepper spray, and he started to scream. After hearing his screams, several unknown officers came to the shower and asked "you're not crying are you" and then said "look at that little penis" while the social worker and nurse looked on. (ECF 1, at 8-9).

Calhoun-El was next taken to see Lieutenant Liken. He told Liken that he wanted to file a complaint based on the incident. Calhoun-El was then taken to an isolation cell, where he was forced to lie face down on the floor while the handcuffs were removed. Shortly afterward, Sergeant Merling, accompanied by several unidentified officers brought a complaint form to Calhoun. Merlin ordered Calhoun-El "to write what I tell you to write." *Id.* Calhoun-El responded he intended to write that he had been beaten and subjected to excessive force. Liken left without giving Calhoun-El an opportunity to file an administrative complaint. Calhoun-El states that on or about August 10, 2013, he received a memorandum from Security Chief Thomas which indicated that he had refused to file a complaint. *Id*.[9]

Calhoun-El was assigned to the isolation cell with only socks, a t-shirt, and underwear.

---

[7] Defendants' counsel "infers that plaintiff means a contingency cell/holding cell." (ECF No. 17, p. 2).

[8] Calhoun indicates in his Reply that he waited for 55 minutes before he received medical attention. (ECF 41, p.3).

[9] Defendants infer Calhoun-El's reference is to an Inmate Statement form. (ECF No. 17, n. 3).

4

There was no mattress or furniture in the cell. He alleges that he received no medication for his type II diabetes and high blood pressure for two days, the lights remained on for 24 hours a day, and he was forced to eat with his fingers. *Id.* at 10.

On August 10, 2013, Calhoun-El was removed from the isolation cell, taken again to the area where there are no cameras, and beaten in the rectum, back, stomach and chest. He states he became semi-conscious. He claims Lois Shaffer, R.N, smiled when she saw him. She examined him and wrote in the medical report that he voiced no complaints. *Id.*; *see also* ECF 41, p. 6.

Calhoun-El claims a "leash" was attached to his handcuffs and he was forced up the stairs. *See id.* He told the officers that he had orders for bottom tier and single cell status. (ECF 41, p. 6). His hands were forced through a cell slot to remove his handcuffs. Calhoun-El was "forced" into cell # 30, and later moved because his cellmate threatened to kill him. On August 14, 2013, Calhoun-El was moved into cell # 15 with an inmate who allegedly has a history of assaultive behavior.

### A. DECLARATION OF CARLTON HARRIS

Calhoun-El has filed a declaration executed by Carlton F. Harris, a fellow inmate at WCI and his former cellmate at NBCI. (ECF 41, Ex. 2, p. 18). Harris attests Calhoun-El was not placed into the entire three-piece restraint by transportation officers. *Id.* at 19. Instead, Calhoun-El had one arm free so that he could use his cane. *Id.* Harris declares he witnessed Officer Wilson tell Calhoun-El once to turn around for cuffing. Harris states he witnessed Calhoun-El explain to Wilson that he had medical paperwork on the table for a cane. At that moment, Wilson applied pepper spray to Calhoun-El's face. *Id.* at 19.

### B. MEDICAL RECORDS

Calhoun-El has provided a copy of his medical record dated March 10, 2012, which

contains the following instruction and temporary order:

> Allow IM [inmate] to use cane when going out of cell d/t [due to] neuropathy + lumbar radiculopathy.

(ECF No. 41, Exhibit 1, p. 16). The medical order anticipated completion or removal by May 9, 2013. Calhoun-El's medical record dated May 12, 2012 reads: "Paperwork for IM to use cane out of cell x 1 yr. from 5/9/12 completed and sent to HU [housing unit]." *Id.* at 17. Defendants do not address whether the order for a cane was in effect at the time Calhoun-El was transported from NBCI to WCI on August 8, 2013.

## II.   DEFENDANTS' RESPONSE

Defendants' verified records and exhibits show that on August 8, 2013, at approximately 10:25 a.m., Officer Wilson, who was assigned to assist with the inmates transferring to WCI attempted to switch Plaintiff's restraints. Calhoun-El, however, refused to place his hands behind his back to be handcuffed. (ECF No. 17, Ex. 4 p. 33).

### A. INCIDENT REPORT

In the incident report filed subsequent to the pepper spray incident, Wilson wrote that he asked plaintiff to turn around and place his hands behind his back for handcuffing, but plaintiff refused to do so. *Id.* Officer Wilson then gave Calhoun-El a direct order to turn around for handcuff placement. Calhoun-El refused, whereupon Wilson told Calhoun-El that if he did not turn around, he would use his pepper spray. Calhoun-El started to reach for Wilson's arms, and Wilson administered pepper spray to Calhoun-El's face and ordered him to get on the ground. Calhoun-El started to walk towards Wilson. At this point, Wilson grabbed Calhoun-El by the jumpsuit and took him to the ground. Calhoun-El complied with Wilson's order to place his hands behind his back and handcuffs were applied. Calhoun-El was then escorted to the medical department at Housing Unit # 4 where he received medical treatment for pepper spray exposure.

6

After he was seen by medical providers, Calhoun-El was given a shower and placed in a cell without further incident. *Id. see also* ECF No. 17, Ex. 5. Calhoun-El was continued on staff alert status until August 9, 2013, for noncompliance with staff instruction and verbal aggressiveness toward staff. (ECF No. 17, Ex. 7).

On August 21, 2013, Calhoun-El was found guilty after a hearing of violating inmate rules #101 (assault or battery on staff) and #400 (disobeying a direct lawful order), and received 250 days of disciplinary segregation for violation of inmate rule #101 and 45 days concurrent for violation of inmate rule #400. (ECF No. 17, Ex. 10 pp. 9-11).

### B. AFFIDAVITS

#### 1. OFFICER WILSON

Wilson attests to the accuracy of his account of the incident in the infraction report. He states:

> Due to Mr. Calhoun-El's noncompliance with my orders and him trying to grab my arms, I applied one short burst of pepper spray to him. When he continued to advance towards me, ignoring my orders, I placed him on the ground. At that point he complied with my orders and control was once again gained of the Complainant; therefore, no further force was used. During this incident I used the appropriate amount of force necessary to gain compliance and control from Mr. Calhoun-El. At no time did I use excessive force against him.

ECF 17, Ex. 5.

Wilson states that after control over Calhoun-El was obtained, he went to the control center for decontamination from pepper spray exposure. Meanwhile, Calhoun-El was escorted to the medical room at Housing Unit # 4. Wilson states that he cannot recall whether Calhoun-El was wearing leg/ankle restrains at the time of his arrival at WCI. (ECF 17, Ex. 17, Ex. 5).

#### 2. LIEUTENANT MERLING

Merling attests that following the August 8, 2013 incident, he gave Calhoun-El an

opportunity to provide an Inmate Statement. Calhoun-El refused to give a statement as witnessed by Officer Logsdon. Merling declares "[a]t no time did I deny Mr. Calhoun-El from providing an Inmate Statement. (ECF No. 17, Ex. 8). Merling states on August 10, 2013, Calhoun-El was removed from contingency cell 4B01 after he complied with staff instructions. Calhoun-El was seen by a nurse where he voiced no complaints and was placed in cell 4B30. At no time was he assaulted by staff, nor did he inform Merling that he was assaulted by staff. Calhoun-El was moved from cell 4B30 to cell 4A14 on August 14, 2013, to enable him to avoid stairs and gain easier access to the shower and recreation. *Id.*

### 3. SCOTT OAKLEY

Scott Oakley, Executive Director of the Inmate Grievance Office (IGO), attests Calhoun-El has filed 16 grievances with the IGO since August 8, 2013, and none pertains to a complaint that he was pepper sprayed and beaten by WCI correctional officers on August 8, 2013 and August 10, 2013. (ECF 17, Ex. 13). He states none of the 16 grievances appears to constitute a grievance "appeal from the disposition of ARP WCI-1207-13." *Id.*

### 4. BRADLEY BUTLER

Bradley Butler, Correctional Officer Captain and Investigator at WCI, states in his declaration that on August 26, 2013, he reviewed ARP # 1207-13 submitted by Calhoun-El. In the ARP, Calhoun-El claimed he was assaulted by staff on August 8, 2013 and again on August 10, 2013. Butler contacted Detective Moore of the IIU and informed him of this claim  Moore informed Butler that the matter was already under investigation and assigned IIU Case # 13-35-01173 1/C. (ECF 17, Ex. 11).

### C. INTERNAL INVESTIGATION UNIT REPORT

Detective Corey McKenzie of the Internal Investigative Unit ("IIU") investigated the

pepper spray incident, and concluded in his report that corrections staff had acted appropriately. (ECF No. 17, Ex. 4). As part of the investigation he reviewed Calhoun-El's pertinent medical records and viewed the video recording for Housing Unit # 4 for August 8, 2013. He also conducted a series of interviews which are summarized below.

### 1. CALHOUN-EL INTERVIEW

McKenzie interviewed Calhoun-El on March 20, 2014. Calhoun-El told the investigator that a only his left arm was cuffed upon arrival at WCI. *Id.* at 4. Calhoun-El's right arm was free so that he could use the cane.[10] The cuffs had been removed and he was standing without cuffs when Wilson told him to turn around. Before he could turn around, he was pepper sprayed, picked up by four or six officers, and dragged out of the dayroom. Calhoun-El stated he was carried to the property room, beaten, and sprayed twice while cuffed from behind the back and thrown into a cage. *Id.* at 7.

Calhoun-El also told McKenzie that on August 10, 2013, six officers went to his cell (4-B-1), ordered him to cuff-up for a medical appointment, and told him he would be moving to a double cell. Calhoun-El refused to go. Calhoun-El said he was taken to the property room where he was kicked in the rectum, stomach and chest until he was semi-conscious. He was then taken to the medical unit where a nurse checked his heart rate. He was dragged up stairs and placed in cell 4-B-30, where he was deprived of a mattress and his property. He was moved because his cell mate threatened to kill him. (ECF No. 17,  Ex. 4, p. 9). Calhoun-El informed McKenzie, "I want transferred [sic] out of this region because I  don't feel safe." *Id.* at 8

In his Reply, Calhoun-El maintains that he asked McKenzie to interview "Plaintiff's witnesses that were in the lobby and C Tier Day Room on August 8, 2013." (ECF 41, p. 21). Calhoun-El does not identify the names of these witnesses and no mention is made of

---

[10] As noted, Calhoun-El  indicates that he was ordered to exit the transport van without his cane. *See supra* p. 3.

investigation in this regard in the IIU report.

## 2. WILSON INTERVIEW

Detective McKenzie interviewed Wilson on March 20, 2014. Wilson's account of the incident is the same as that set forth in his affidavit and in the incident report. *See supra* pp. 6-7. Additionally, Wilson told the investigator that Officer Christopher Turner had applied the hand restraints to Calhoun-El after the inmate was taken to the ground. (ECF No. 17, Ex. 4, p. 10).

On April 11, 2014, the investigator posed several follow-up questions to Officer Wilson. He asked Wilson if he recalled whether Calhoun-El was wearing a three-piece restraint (waist chain, handcuffs, and black box) when the he arrived at WCI. Wilson was "positive that Inmate Calhoun-El was in a three piece [sic] restraint but could not remember if Inmate Calhoun-El was in leg/ankle restraints." *Id.* at 12.[11]

## 3. TURNER INTERVIEW

On April 10, 2014, Officer Christopher Turner told the IIU investigator that he was notified by the housing unit sergeant about inmate transfers arriving from North Branch Correctional Institution. (ECF No. 17, Ex. 4, p. 11). The sergeant informed Turner the inmates would enter the C-tier recreation hall one-by-one. When Turner arrived at the rec hall, he heard Officer Wilson giving Calhoun-El a direct order to cuff-up and observed Calhoun-El reach for Wilson. Turner said Wilson sprayed Calhoun-El with a burst of pepper spray and took him to the ground. He told the investigator that he placed handcuffs on Calhoun-El and he and another officer assisted Calhoun-El to his feet, escorted him to the HU # 4 property room,[12] and put Calhoun-El in a cage. *Id*; *see also* ECF No. 17, Ex. 4. p. 32.

When asked by the investigator whether he observed Wilson or any other officer assault

---

[11] Calhoun-El attests in his declaration that he was not in leg restraints. *See supra* p. 3.

[12] Defendants have not filed a declaration executed by Officer Turner in support of their dispositive motion.

Calhoun-El during the incident, Turner replied "No sir, in fact Officer Wilson had no contact with Inmate Calhoun-El after he sprayed [him]." (ECF No. 17, Ex. 4 p. 11). After placing Calhoun-El in the cage, Turner left to decontaminate himself from the pepper spray. Turner denied having any contact with Calhoun-El on August 10, 2013. *Id.*

### D. MEDICAL RECORDS

Calhoun's medical intake record dated August 8, 2013, does not indicate the existence of a pre-existing medical order for use of a cane. *Id.* at pp. 46-48. Calhoun-El's medical records dated August 8, 2013, indicate that at approximately 11:35 am, he was evaluated by Dennis Martin, R.N. for pepper spray exposure. (ECF 17, Ex. 4, p. 36). The record indicates Calhoun-El's lungs were clear and his face was cleaned with sterile saline. *Id.* No injuries were noted or reported. *Id.*

On August 10, 2013, at 8:30 am, Calhoun-El was seen by medical personnel who took his vital signs. The record indicates Calhoun-El reported no complaints and exhibited no evidence of injury. (ECF 17, Ex. 4, pp. 10, 53).

On August 12, 2013, Calhoun-El refused to report to the medical room for his PEGASYS injection. PEGASYS is a prescription medication used for people with chronic hepatitis B, chronic hepatitis C or HIV. *Id.* at 55. Rebecca Leatherman, R.N., escorted by two correctional officers went to Calhoun-El's cell, and he refused his medical treatment. *Id.* A Release of Responsibility (ROR) form was prepared by medical staff. *Id.* at 54-56. A notation in the record indicates he had been difficult since arrival making numerous demands including insistence on a single cell and refusing prescribed medicines. *Id.* at 55.

On August 14, 2013, Calhoun-El submitted sick call request on which he wrote he had sustained injuries from excessive use of force on August 8, 2013 and August 10, 2014, and stated

he needed a wheelchair. *Id.* at 58. On August 31, 2013, he refused to see medical staff about issuance of a cane, so another ROR was completed. *Id.* at 60-61.

On October 11, 2013, an order for bottom bunk status was renewed for Calhoun-El for one year, and on December 23, 2013, he was issued a cane. *Id.* at pp. 60-61.

### E. VIDEOTAPE

On April 10, 2013, Detective McKenzie reviewed the videotape of Housing Unit # 4 for August 8, 2013. After reviewing the tape for approximately forty minutes, he concluded "nothing of evidentiary value was discovered." *Id.* According to Housing Unit 3 Manager, Lt. R Gordon, the location of the incident was not captured on the recording. *Id.* at 31.[13]

### STANDARD OF REVIEW

### I. MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences,

---

[13] Court review of the approximately ten minute recording without audio "8-4 shift Interior Camera Housing, Unit 4 August 8, 2013," filed by Defendants (ECF 31), yielded no information relevant to incident. The recording consists of series of still shots of a hallway, showing various unidentified inmates and officers. The incidents at issue are not shown. Calhoun-El reviewed the recording on July 17, 2014. (ECF Nos. 26, and 31, Ex. 3).

12

unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. Id. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## II.    MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motions and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). A material fact is one that "might affect the outcome of

13

the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott*, 550 U.S. at 378. This Court also has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993). When a motion for summary judgment is properly made and supported, the nonmoving party must set out specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *See Anderson*, 477 U.S. at 249–50. A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citations omitted). To survive a motion for summary judgment, the non-moving party must produce competent evidence to reveal the existence of a genuine issue of material fact for trial. *See Thompson v. Potomac Elec. Power* Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." (internal quotation marks omitted)).

Mindful that Calhoun-El is proceeding *pro se*, this Court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520

(1972) (pleadings filed by a *pro se* litigant are held "to less stringent standards than formal pleadings drafted by lawyers).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *See Baker v. McCollan,* 443 U.S. 137 (1979). Defendants posit no genuine issues of material fact are presented and they are entitled to summary judgment in their favor as a matter of law. They raise lack of administrative exhaustion, failure to state a claim, respondeat superior, and qualified immunity as affirmative defenses.

## I.   ADMINISTRATIVE EXHAUSTION

As a threshold matter, Defendants argue Calhoun-El failed to exhaust his claims through an available administrative remedy procedure. Specifically Defendants seek dismissal based on Calhoun-El's failure to file a grievance concerning the claims raised in this case.

The Prisoner Litigation Reform Act (PLRA) provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). This requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay,* 286 F.Supp.2d 523, 530 (D. Md. 2003), aff'd 98 F.App'x 253 (4th Cir. 2004). Exhaustion is required even if the relief sought is not attainable through resort to the administrative remedy procedure. *Booth v. Churner,* 532 U.S. 731, 740–41 (2001). A claim which has not been exhausted may not be considered by this Court. *See Jones v. Bock,* 549 U.S. 199, 220 (2007). Administrative remedies must, however, be available to the prisoner

15

and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

On August 14, 2013, Calhoun-El filed ARP WCI-120713 complaining he was subjected to excessive force on August 8, 2013 and August 10, 2013. (ECF No. 1, pp. 17-20). The ARP was dismissed on August 26, 2013, because the matter was under IIU investigation in case 13-3501173 I/C. (ECF 1 pp. 17-18). This Court is familiar with the Division of Correction's practice to decline an investigation for an ARP where one is already pending before the IIU. Thus, this Court concludes that the administrative exhaustion requirement regarding alleged use of excessive force is satisfied, where, as here, the administrative procedure is unavailable.

## II.      CLAIMS AGAINST WARDEN BISHOP AND SECURITY CHIEF THOMAS

A defendant must have been personally involved in the allegedly unconstitutional action or omission to act to be liable in a §1983 action. *See West v. Atkins*, 815 F.2d 993 (4th Cir. 1987). Calhoun-El seeks to hold Defendants Thomas and Bishop liable based on his generally stated allegation that they recommended and approved his placement on Housing Unit 4. *See supra* p. 2. His claim is unavailing for several reasons. First, he fails to show either Defendant was personally involved in the decision to assign him to Unit. 4. Second, Calhoun-El does not explain why he believes his placement in housing Unit 4 was improper, or more importantly constituted a violation of his constitutional rights or federal law.

To the extent Calhoun-El names either Defendant based on his supervisory role, a defendant in a § 1983 action may not be held liable based upon the theory of respondeat superior. *See Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Instead, supervisory liability is

16

"determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.' " *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). "Supervisory liability under § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799. Calhoun-El sets forth no allegations of fact suggesting this case satisfies the standard for assigning supervisory liability. Consequently, the claims against Bishop and Thomas will be dismissed and they will be dismissed as Defendants.

### III.    VERBAL HARASSMENT

To the extent Calhoun-El maintains unidentified officers' comments about crying in the shower and his small penis constitute verbal harassment, his allegations fail to amount to a claim of constitutional magnitude. "[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir.1995). Mere verbal abuse and taunting inmates by guards, including aggravating language, does not state a constitutional claim. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (stating "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983") (citing *Collins v. Cundy*, 603 F.2d 825, 82 10th Cir. 1979); *cf. Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978)

(Allegations that a guard threatened to have an inmate killed were sufficient to state a § 1983 claim).

Calhoun-El has provided the court with no basis upon which to grant relief. Accordingly, this claim will be dismissed with prejudice.[14]

## III.   DUE PROCESS

Calhoun-El observes Defendants are responsible for the safety of inmates under their supervision, and Division of Correction Direct # 110-6 states an inmate shall not be assaulted by staff unless he poses a serious threat. (ECF 1). The alleged violation of a prison regulation does not implicate a constitutional right. Thus, his claim is insufficient as a matter of law to support a claim for relief under § 1983. *See Riccio v. City of Fairfax, Va.*, 907 F.2d 1459 (4th Cir.1990) (violations of a procedure not required by the Constitution do not state a due process claim); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (observing section 1983 protects against constitutional violations, not violations of prison rules). Insofar as Calhoun-El intends to claim Defendants have violated their own policies, procedures and regulations, a violation of state law or regulation does not provide grounds for a due process violation claim. *See Weller v. Dept. of Social Services*, 901 F.2d 387 (4th Cir. 1990). [15]

Similarly, Calhoun-El claims that Lieutenant Merling left his cell on August 8, 2013, without permitting him to write an inmate statement, fails to identify a constitutional provision or

---

[14] In so ruling, this Court finds such remarks, if made, highly unprofessional.

[15] Although inmates retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of good conduct time, he is entitled to certain due process protections, *i.e.*, advance written notice of the charges, written statement of the evidence relied on and the reasons for taking any disciplinary action, a hearing where he is afforded the right to call witnesses and present evidence, a written decision, the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues, and an impartial decision-maker. *See Wolff*, 418 U.S. at 564–71. In this case *Wolff* is inapplicable as Calhoun-El suffered no loss of diminution credits.

federal law abridged by such action.  To the extent Calhoun-El intends to raise a claim regarding

the ARP process, an inmate has no constitutional right to the establishment of an administrative

remedy or other grievance process or to participate in one voluntarily established by the state.

*See Adams v. Rice*, 40 F.3d 72, 75 (1994).  For these reasons, the due process claim will be

dismissed with prejudice.

## IV.    INADEQUATE MEDICAL CARE

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue

of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173

(1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must

demonstrate that the actions of defendants (or their failure to act) amounted to deliberate

indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was

suffering from a serious medical need and that, subjectively,  prison staff were aware of the need

for medical attention but failed to either provide it or ensure the needed care was available. *See

Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Proof of an objectively serious medical condition, however, does not end the inquiry.

The second component of proof requires "subjective recklessness" in the face of the serious

medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.

*Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the

part of the alleged inflicter . . . becomes essential to proof of deliberate indifference "because

prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment."

*Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*,

19

511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

In this case, Calhoun-El does not claim Defendants acted with deliberate indifference to impede his access to medical care on either August 8, 2013 or August 10, 2013. While Calhoun-El may have been dissatisfied with the care he received from medical providers, he does not claim this treatment was a result of Defendants' actions or omissions. Defendants, none of whom is identified as a medical provider, are entitled to rely on the medical judgment and expertise of medical personnel regarding the course of treatment necessary for inmates. *See Shakka v. Smith*, 71 F.3d 162 (4th. Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (noting prison officials cannot substitute their judgment for a medical professional's on issues of treatment).

Calhoun-El's allegation that he pleaded for medical treatment after he was administered pepper spray, but waited more than twenty-five minutes[16] before he was provided a shower, as presented here, does not amount to a claim of constitutional magnitude. First, Calhoun-El does not specify the names of the officers whom he faults in this regard. Next, Calhoun-El was first taken to the medical unit for pepper spray exposure and then received a shower within a short period of time, thereby negating the suggestion of deliberate indifference. Accordingly, summary judgment will be entered in favor of Defendants as to this claim.

## V.    CONDITIONS OF CONFINEMENT

To state a constitutional claim regarding prison conditions, a prisoner must allege facts that the challenged conditions resulted in a deprivation of a basic human need that was

---

[16]   In his Reply, Calhoun-El indicates he waited some fifty-five minutes. (ECF No. 41, p. 19). Clearly, relief was provided in a prompt fashion, thereby negating demonstration of deliberate indifference.

objectively "sufficiently serious" and a defendant prison official subjectively acted with deliberate indifference regarding the conditions. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In order to meet the objective element, a prisoner must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993). An inmate is not entitled to relief simply because of uncomfortable, restrictive, or inconvenient conditions of confinement because "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Insofar as Calhoun-El intends to assert an Eighth Amendment claim regarding his two-day placement in a contingency cell and receipt of a shower that was too hot, his claims are unavailing. He fails to allege Defendants were responsible for adjusting or initially knew the shower temperature, or otherwise acted to deliberately and maliciously cause him harm. Although the hot shower may have been very uncomfortable in light of his recent exposure to pepper spray, officers went to the shower after hearing his screams. Lastly, Calhoun-El does not allege suffering any serious or significant physical injury as a result. *See Strickler*, 989 F.2d at 1380–81.

As to his two-day placement in an isolation cell without a mattress or furniture, Calhoun-El fails to demonstrate Defendants acted with sufficient culpability. *See e.g., Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997); *Strickler*, 989 F.2d at 1379–81. At the time of his placement, Calhoun-El had been the subject of an adjustment report and cannot demonstrate the action was totally without penological justification. He remained in the cell a second day because he continued to exhibit negative

behavior; specifically, he was verbally aggressive toward staff and failed to comply with instructions. (ECF No. 17, p. 7; ECF 7, 9, and 11). Once his behavior improved, he was removed from the cell. (ECF No. 17, Ex. 6-9).

Calhoun-El does not allege suffering any serious or significant physical injury, and his brief placement fails to amount to an "unnecessary and wanton" infliction of pain action without penological justification. *Rhodes*, 452 U.S. at 347. In short, no genuine issue of material fact is in dispute, and Defendants are entitled to summary judgment in their favor as a matter of law.

## VI.   EXCESSIVE FORCE

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Eighth Amendment analysis asks whether the prison officials "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* at 761.

In a claim for excessive application of force, a prisoner must meet a heavy burden to satisfy the subjective component—that prison officials applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010). In determining whether a prison official has acted with "wantonness in the infliction of pain," *Whitley*, 475 U.S. at 322, courts should consider the necessity for the application of force; the relationship between the need for force and the amount of force used; the extent of the injury inflicted; the extent of the threat to the safety of the staff and other prisoners, as reasonably perceived by prison officials based on the facts known to them at the time; and the and the efforts

22

taken by the officials to temper the severity of the force. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).   As to the objective component, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated[,] whether or not significant injury is evident." *Wilkins*, 130 S. Ct. at 1178 (internal quotation marks omitted).

This Court recognizes prison officials are charged with balancing competing governmental interests including maintaining order, protecting correctional officers, prison staff and inmates; and ensuring inmates' rights to be free from cruel and unusual punishment. *See e.g. Whitley*, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. *See Hudson*, 503 U.S. at 6.

Defendants maintain they are entitled to summary judgment in their favor as to these claims. In support, they have provided: 1) declarations from Officer Wilson and Lt. Merling; 2) the adjustment hearing decision finding Calhoun-El guilty of rule violations based on the August 8, 2013 incident in the C-tier day room; and the 3) the IIU investigation which determined correctional staff acted appropriately. Ignoring Calhoun-El's claims of gagging, pain, and other injury set forth in his Complaint, Defendants aver he "sustained no injuries and suffered only from pepper spray exposure." (ECF 17, p. 13). Use of pepper spray on a docile prisoner may qualify as excessive force. *See Iko v. Shreve*, 535 F.3d 225, 239-40 (4th Cir. 2008) (finding genuine issue of material fact when prison guard deployed several bursts of pepper spray on docile prisoner); *Williams*, 77 F.3d at 763 (noting "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents, in quantities greater than necessary or for the sole purpose of infliction of pain" (internal quotation marks omitted)).

Calhoun-El disputes Defendants' request for summary judgment with regard to his use of

excessive force claims, providing affidavits and evidence showing genuine issues for trial. Calhoun-El and Carleton Harris both attest that Officer Wilson administered the pepper spray without first directly ordering Calhoun-El to turn around for handcuffing, and both inmates state Calhoun-El arrived at WCI with only one hand in the three-piece restraint to permit him to use a cane with his free hand.[17]

Additionally, it is unclear whether Officer Wilson was aware that Calhoun-El had a medical order for use of a cane, whether Calhoun-El's medical paperwork for a cane was valid, whether Calhoun-El advanced towards Wilson while before pepper spray was administered, whether the pepper spray was necessary to maintain discipline, and whether Officer Wilson believed he, other staff or other inmates were at risk under the circumstances. Despite Defendants' assertions, it is clear that material facts remain in dispute.

It bears noting as well that though Calhoun-El informed the IIU investigator about the beatings he allegedly received on August 8, 2013 and August 10, 2013, and included his allegations in ARP # 1207-13 which was dismissed based on the ongoing IIU investigation, the IIU report focused on the first pepper spray incident and does not contain any findings concerning the alleged subsequent beatings. (ECF 17, Ex. 4 pp. 9). Calhoun-El maintains that he asked the investigator to interview unnamed witnesses who were in the lobby and C Tier Day Room, and no mention of this is made in the IIU report. *See supra* p. 9. Further, although Officer Wilson and Lieutenant Merling attest that Calhoun-El was not beaten, neither Defendant is alleged to have participated in beatings subsequent to the first pepper spray incident. Curiously, as the record suggests Officer Turner was among the officers who may have escorted Calhoun-El to the property area and then to the contingency cell on August 8, 2014, Defendants have not submitted his declaration. In light of Calhoun-El's later identification of Officers

24

Fontaine and Hill, who are presumably two of the six unidentified officers who may have participated in the alleged beatings, the absence of pertinent declarations or other verified exhibits raises question.

In sum, there exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," and as such, summary judgment is inappropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[18] Consequently, Defendants' Motion for Summary Judgment as to the use of excessive force claims will be denied without prejudice to refiling within forty days. If Defendants renew their Motion for Summary Judgment within the requisite time, they are instructed to include affidavits and exhibits that directly address Calhoun-El's allegations he was sprayed with pepper spray a second time and beaten on August 8, 2013 and beaten again on August 10, 2013.

### CONCLUSION

For these reasons, the claims against Defendants Bishop and Thomas ARE DISMISSED WITH PREJUDICE.  Defendants Bishop and Thomas ARE DISMISSED as party defendants. Plaintiff's due process, verbal harassment, and imminent danger of harm claims ARE DISMISSED WITH PREJUDICE.

Summary judgment IS GRANTED in part and IS DENIED in part. Summary judgment IS GRANTED in favor of all remaining Defendants as to the claims of inadequate medical care

---

[18] If the actions of Defendants occurred in the manner alleged by Calhoun-El, qualified immunity would not apply.

and conditions of confinement. Summary judgment IS DENIED WITHOUT PREJUDICE subject to renewal within forty days as to Plaintiff's excessive force claims. A separate Order will issue consonant with this Memorandum Opinion.


November 25, 2014                                    _____
                                                     RICHARD D. BENNETT
                                                     UNITED STATES DISTRICT JUDGE

26