## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAMES CALHOUN-EL, # 160083     *
     Plaintiff,

                            *

     v.                       CIVIL ACTION NO RDB-13-3868

                            *

LIEUTENANT LIKEN,
LIEUTENANT P. MERLING,     *
G.WILSON,
SIX UNKNOWN OFFICERS,     *
OFFICER FOUNTAIN,
OFFICER HENDRICKS,     *
OFFICER HILL,
OFFICER LOGSON,     *
     Defendants.

                            *
                     ******

### MEMORANDUM OPINION

Defendants Correction Officer Jeremiah L. Fountaine, Correctional Officer David L. Hedrick, former Correctional Officer Cletus Hill,[1] Correctional Officer Rodney O. Liken, Correctional Officer William L. Logson, Lieutenant Phillip D. Merling, and Correctional Officer Gerald L. Wilson, Jr., by their counsel, have filed a Motion to Renew Summary Judgment. (ECF 55).[2] Self-represented Plaintiff James Calhoun-El has filed an opposition and a Motion to Amend. (ECF 61, 62).

A hearing is unnecessary at the present time. *See* Local Rule 106.5 (D. Md. 2014). For reasons to follow, Plaintiff's Motion to Amend (ECF 61) IS GRANTED and Defendants' Motion to Renew Summary Judgment (ECF 55) IS DENIED.[3]

---

[1] Officer Hill has retired from state service. Counsel states efforts to contact Hill to obtain his declaration were unsuccessful. (ECF 55-1, n. 1).

[2] The Clerk will amend the docket to reflect the correct spelling of Defendants' names.

[3] This Court will appoint counsel to represent Calhoun-El in pursuing his excessive force claims.

## PROCEDURAL HISTORY

Calhoun-El is an inmate at Western Correctional Institution ("WCI").  He filed this case pursuant to 42 U.S.C. § 1983 on December 12, 2013.  After briefing by the parties, this Court granted in part and denied in part Defendants' Motion to Dismiss or in the Alternative for Summary Judgment on November 25, 2014. (ECF 41, 42, 43).  The claims against Warden Frank Bishop and Chief of Security Michael P. Thomas were dismissed with prejudice, and Bishop and Thomas were dismissed from this case. (ECF 42, 43). Calhoun-El's claims of due process violation, verbal harassment, and imminent danger of harm were dismissed without prejudice. *Id.*

In addition, this Court granted in part and denied in part summary judgment as to the remaining Defendants.  Summary judgment was denied without prejudice subject to renewal as to Calhoun-El's excessive force claims.  Summary judgment was granted in favor of Defendants as to all remaining claims. *Id.*

On March 20, 2015, Defendants filed a Renewed Motion for Summary Judgment (ECF 55) to which Calhoun-El filed an opposition on April 16, 2015. (ECF 62).

## BACKGROUND

Calhoun-El's excessive force claim is predicated on three incidents which occurred shortly after his transfer from North Branch Correctional Institution ("NBCI") to WCI on August 8, 2013.  Calhoun alleges he was assaulted twice on August 8, 2013, and again on August 10, 2013.  (ECF 1).

## I.   CALHOUN'S EXCESSIVE FORCE CLAIMS

In ruling on a motion for summary judgment, Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### A. FIRST INCIDENT

The first incident occurred on the morning of August 8, 2013. Calhoun-El states that after he arrived at WCI, Officer Turner told him to turn around to be handcuffed from behind. (ECF 1, p. 7, ¶ 7). Calhoun-El tried to explain he has medical authorization to use a cane. (ECF No. 1, p 18). Calhoun-El avers that before he could produce the paperwork, Wilson administered one burst of pepper spray directly in his face. (ECF 41, p. 3).

Calhoun explains that the officers who transported him from NBCI to WCI had placed three-piece restraints on all transferring inmates, except him. (ECF 41, Ex. 1, p. 2).[4] His left arm was cuffed and his right arm was free so that he could use his cane. *Id.* Calhoun-El states the transportation officers had ordered him to exit the transport van without his cane,[5] and then an unidentified transportation officer removed his restraints. *Id; see also* ECF 41, pp. 7; 41-2, p. 2. Calhoun states "his cuffs were removed in an unsecured area by transportation officers." (ECF 62, p 4).

Calhoun-El has provided for the record a copy of his medical record dated March 10, 2012, which contains instructions and a temporary order to allow him to use cane when out of his cell. (ECF 41-2, p. 16). The medical order was for one year, with an anticipated completion date of May 9, 2013. *Id.* In his opposition to the Renewed Motion for Summary Judgment, Calhoun-El attests he was again assigned a cane for one year, effective March 23, 2013. (ECF 62-2, p. 42).

Calhoun-El filed affidavits supporting his account of the incident. In his affidavit, Carlton F. Harris, an inmate at WCI and Calhoun-El's former cellmate at NBCI, attests Calhoun-El was not placed into the entire three-piece restraint by transportation officers on August 8, 2013. (ECF

---

[4] Presumably this mode of handcuffing might have alerted corrections officers of Calhoun-El's need for a cane.

[5] Defendants are not transportation officers.

41, Ex. 2, pp. 18-19; ECF 62-2, pp. 9-11).   Instead, Calhoun-El was restrained with one arm free so that he could use his cane. *Id.*  Harris declares he witnessed Officer Wilson tell Calhoun-El once to turn around for cuffing, and witnessed Calhoun-El explain to Wilson that he had medical paperwork on the table for a cane.  At that moment, Wilson applied pepper spray to Calhoun-El's face. *Id.*

In his affidavit, Kevin Mosby, an inmate who was also transported from NBCI to WCI on August 8, 2013, attests to witnessing Wilson tell Calhoun-El one time to turn around to be cuffed from the rear. (ECF 62-2, pp. 7-8).  Mosby states Calhoun-El "did ascent the transportation Van with his cane [sic]." *Id.* at 7.  Mosby attests Calhoun-El requested to use his cane upon arrival at WCI, and Calhoun-El tried to explain he had medical authorization for a cane.  Mosby witnessed Wilson apply one burst of pepper spray directly to Calhoun-El's face.  Mosby states he did not see Calhoun-El try to grab Wilson's arm or move toward Wilson. *Id.* at 7-8.

## B. SECOND INCIDENT

Calhoun-El claims that after pepper spray was deployed, officers took him to the floor, handcuffed him from behind his back, and "6 unknown officers" took him to an area without security cameras. (ECF 1, p. 7).  He alleges the officers administered two additional bursts of pepper spray directly to his chest, and beat him on the stomach, chest, and back. *Id.* at 8.   In his opposition to Defendants' Renewed Motion for Summary Judgment, Calhoun-El has submitted a declaration identifying the officers at Lt. Merling, Officer Benson, Officer Fontaine, Officer Turner, Officer Raines, Sgt. Payton Officer Wilson, Officer Inland, and Officer Hedrick. (ECF 62-2, pp. 41). In his affidavit, Kevin Mosby declares that while being moved out of the room where the first incident occurred, he could see another burst of pepper spray coming from the

area where corrections staff were carrying Calhoun-El.[6] (ECF 62-2, pp. 7-8).

Calhoun-El alleges he was then slammed into a "cage"[7] without proper ventilation or decontamination for over twenty-five minutes. He pleaded for medical help because he was gagging, unable to see, and in intense pain. *Id.* at 9. Calhoun-El was then taken to the medical unit where Nurse Dennis Martin purportedly told him "They got you good." (ECF 41, p. 3). Calhoun-El was taken for a decontamination shower after medical evaluation. (ECF 1, at 8-9).

Calhoun-El claims he told Lieutenant Liken he wanted to file a complaint based on the incident. Calhoun-El was then taken to an isolation cell. Sergeant Merling, who was accompanied by other unidentified officers, gave an inmate statement form to Calhoun. Merling ordered Calhoun-El "to write what I tell you to write." *Id.* When Calhoun-El responded that he intended to write that he had been beaten and subjected to excessive force, Merling left without giving Calhoun-El an opportunity to file a statement. *Id.*[8]

## C. THIRD INCIDENT

Calhoun-El claims after he was removed from the isolation cell on August 10, 2013, he was taken to an area where there are no security cameras and assaulted by several unknown officers. He claims he was beaten in the rectum, back, stomach and chest, until rendered "semi-conscious." *Id.*; *see also* ECF 41, p. 6. Afterward, a "leash" was attached to his handcuffs and he was forced up a flight of stairs and placed in a cell. *Id.*

Calhoun-El has submitted a declaration with his opposition to Defendants' Renewed

---

[6] Calhoun-El has also filed a declaration executed by inmate Bruman Alvarez, who attests to his own difficulty obtaining authorization to use a cane. (ECF 62-2, p. 12). Alvarez provides no information relevant to the excessive force issue under consideration here.

[7] Defendants' counsel "infers that plaintiff means a contingency cell/holding cell." (ECF No. 17, p. 2).

[8] On August 21, 2013, Calhoun-El was found guilty of violating inmate rules #101 (assault or battery on staff) and #400 (disobeying a direct lawful order) and received 250 days of disciplinary segregation. (ECF No. 17-12, pp. 9-11).

Motion for Summary Judgment identifying the officers who allegedly assaulted him on August 10, 2013, as Lt. Merling, Officer Benson, Officer Fontaine, Officer Turner, Officer Raines, Sgt. Payton, Officer Wilson, Officer Nilend, and Officer Hedrick. (ECF 62-2, p. 41).

## II.   DEFENDANTS' RESPONSE

Defendants assert there was one use of force incident involving Calhoun-El.  On August 8, 2013, Calhoun-El refused to comply with Officer Wilson's order to turn to permit placement of handcuffs.  After Wilson gave him a direct order to turn around for handcuffing and warned pepper spray would be deployed if he did not obey, Calhoun-El still refused to comply. Furthermore, Calhoun-El started to move toward Wilson and tried to grab his arm. At that point, Wilson directed a burst of pepper spray toward Calhoun-El's face. (ECF 17-4 p. 33).[9] Defendants deny assaulting or witnessing other staff members assault Calhoun-El on August 8, 2013, or August 10, 2013.   There is no institutional record of other use of force incidents involving Calhoun-El on August 8, 2013 or August 10, 2013.  (ECF 55-9).

Calhoun-El's medical records reveal that on October 8, 2013, at 11:35 a.m. he was taken to the medical unit for pepper spray exposure.  The record states "no injuries noted or reported." Calhoun-El's vital signs were taken and his face was treated with sterile solution.  Photographs taken of Calhoun-El on August 8, 2013, show his eyes were swollen.  (ECF 17-6, pp. 39-40). Additionally, on August 10, 2013, at 8:34 a.m. Calhoun-El was seen for an unscheduled medical visit. (ECF 17-6, pp. 53).  The record indicates Calhoun-El was escorted to the medical room for

---

[9] Detective Corey McKenzie of the Internal Investigative Unit ("IIU") investigated the first incident, and concluded that corrections staff had acted appropriately. (ECF 17-6).  The investigator concluded there was insufficient evidence to determine whether Calhoun-El had been assaulted afterwards on August 8, 2013 and August 10, 2013, and the matter was closed. *Id.* at 13.  The IIU investigation included interviews with Calhoun-El and corrections staff, review of Calhoun-El's medical records, and review of the video recording for Housing Unit # 4 for August 8, 2013. The video recording was filed in this case at the request of this Court. (ECF 25, 31). The recording yielded no relevant information.

"vitals."[10]  The record indicates Calhoun-El "voiced no complaints" and there was "no evidence of injury." *Id.*

## A.  DEFENDANTS' AFFIDAVITS

### 1.  GERALD L. WILSON

Wilson attests:

> Due to Mr. Calhoun-El's noncompliance with my orders and him trying to grab my arms, I applied one short burst of pepper spray to him. When he continued to advance towards me, ignoring my orders, I placed him on the ground. At that point he complied with my orders and control was once again gained of the Complainant; therefore, no further force was used. During this incident I used the appropriate amount of force necessary to gain compliance and control from Mr. Calhoun-El. At no time did I use excessive force against him.

ECF 17-7.[11]

Wilson went to the control center for decontamination from pepper spray exposure after the incident. Meanwhile, Calhoun-El was escorted to the medical room at Housing Unit # 4.  *Id.* Wilson states that when Calhoun-El arrived at WCI, he wore three-piece restraints. *Id.*

Wilson executed in a second declaration which was filed with Defendants' Renewed Motion for Summary Judgment.  It states in part:

> In addition, at no time did I spray Mr. Calhoun-El in the face with pepper spray while he was allegedly trying to explain to me that he had a medical order.  As mentioned in my previous declaration, Mr. Calhoun-El was pepper sprayed due to his failure to comply with several orders to be handcuffed coupled with him attempting to grab my arm.
>
> Mr. Calhoun-El was transferred from NBCI to WCI on August 8, 2013. He was escorted to Housing Unit # 4 upon his arrival to WCI; therefore, I did not see him being removed from the van or have contact with him until he entered HU # 4.  I did not witness the Complainant with a cane when he arrived at WCI.

---

[10]   This Court has noted that prisoners are usually brought to the medical unit for examination and to have their vital signs assessed after involvement in an incident of some kind.

[11]   Wilson's account of the August 8, 2013, use of force incident (referred to here as the "First Incident") is consistent with the Incident Report issued afterward. ECF 17-6, pp. 28-32; *see also* ECF No. 17-5. The Incident Report also indicated Calhoun-El had refused to provide a statement. ECF 17-6, p. 34.

At no time did I spray Mr. Calhoun-El once he was restrained. I did not assault or witness any other staff person assault Mr. Calhoun-El on August 8, 2013, on August 10, 2013, or at any other time.

(ECF 55-4, ¶¶ 4-7).

### 2. CHRISTOPHER TURNER

Turner assisted in the processing of incoming inmates on August 8, 2013.  He attests:

After the transportation officers removed the restraints from Mr. Calhoun-El, Ofc. Wilson asked him to turn around and have restraints placed on his wrists.  Mr. Calhoun-El refused. Ofc. Wilson then gave another order for him to turn around and have restraints applied to which he refused again. Then Ofc. Wilson explained to Mr. Calhoun-El that if he did not turn around to have restraints applied that he would be forced to use pepper spray in order to get him to comply. Mr. Calhoun-El suddenly reached for Ofc. Wilson's arms at which Ofc. Wilson immediately applied a short burst of pepper spray to Mr. Calhoun-El's facial area. The Complainant then started to move towards Ofc.Wilson at which point Ofc. Wilson grabbed his jumpsuit and placed him on the ground. I then placed restraints on Mr. Calhoun-El's wrists and escorted him to the HU # 4 medical room without further incident. After escorting Mr. Calhoun-El to the medical room I left in order to decontaminate myself from the pepper spray.  I did not have any further contact with Mr. Calhoun-El that day.

(ECF 55-3 ¶ 4).   Turner attests that he did not assault or witness any other staff member assault Calhoun-El on August 8, 2013, August 10, 2013, or at any other time. *Id.* ¶ 5.

### 3. JEREMIAH FONTAINE

Fontaine denies assaulting or witnessing any other staff member assault Calhoun-El on August 8, 2013, August 10, 2013, or at any other time.  He states he was not involved in the August 8, 2013 use of force incident, but "remained with Mr. Calhoun-El while he was being treated by medical staff for exposure to pepper spray in order for those staff involved to decontaminate from the pepper spray." (ECF 55-5, ¶¶ 3, 4).   Fontaine attests he "was not involved in any other incidents with the Complainant on August 8, 2013 or August 10, 2013." *Id.* ¶4.

### 4.  DAVID HEDRICK

Hedrick attests he "did not assault or witness any other staff person assault Mr. Calhoun-El on August 8, 2013, on August 10, 2013, or at any other time." (ECF 55-6).  Hedrick states he was not involved in the August 8, 2013, use of force incident, but stayed with Mr. Calhoun-El while he was treated by medical staff for exposure to pepper spray in order for those staff involved to decontaminate. *Id.*  Hedrick denies involvement in any other incidents with Calhoun-El on August 8, 2013 or August 10, 2013.  *Id.*

### 5.  PHILIP MERLING

Merling attests that following the August 8, 2013 use of force incident, he provided Calhoun-El an opportunity to give an Inmate Statement with Officer Logsdon serving as witness. Calhoun-El refused to provide a statement.  Merling attests "[a]t no time did I deny Mr. Calhoun-El from providing an Inmate Statement." (ECF 17-10 ¶ 4).

In a second declaration filed with the Renewed Motion for Summary Judgment, Merling reiterates that Calhoun-El refused the opportunity to complete an Inmate Statement. (ECF 55-7). Merling further attests "[a]t no time did I state to Mr. Calhoun-El 'you'll write what I tell you to write.'" *Id.*

Merling states that on August 10, 2013, Calhoun-El was removed from contingency cell 4B01 after he complied with staff instructions. (ECF 17-10, ¶ 5).  Calhoun-El was seen by a nurse.  He voiced no complaints and was placed in cell 4B30.  At no time was he assaulted by staff, nor did he inform Merling that he was assaulted by staff.  *Id.*

### 6.  WILLIAM LOGSDON

Logsdon denies assaulting or witnessing any other staff member assault Calhoun-El on August 8, 2013 or August 10, 2013.  (ECF 55-8 ¶ 3).  Logsdon attests to witnessing Sergeant

Merling[12] ask Calhoun-El if he wanted to fill out an Inmate Statement. Logsdon states Calhoun-El refused to complete a statement. (ECF 55-8, ¶ 4).  Logsdon attests "[a]t no time did I hear Sgt. Merling state to Mr. Calhoun-El 'you'll write what I tell you to write.'"  *Id.*

Logsdon states he was not involved in any other incidents with Calhoun-El on August 8, 2013 or August 10, 2013.  *Id.* ¶ 5.  Further, on August 10, 2013, he was assigned to the armory, and could not have been in Housing Unit # 4 and come into contact with Calhoun-El.  *Id.*

### 7.  TENNILLE WINTERS

Winters is a correctional case manager at WCI.  Winters attests: 1) review of prison records show there was one use of force incident involving Calhoun-El on August 8, 2013; 2) there is no record that other incidents occurred involving Calhoun-El on August 8, 2013 or on August 10, 2013; and 3) Officer Hill was not working at WCI on August 10, 2013. (ECF 55-9).

Winters states that Calhoun-El was issued a cane at NBCI on March 23, 2013, for one year. Winters concludes, "Mr. Calhoun-El did not receive an order from WCI for a cane until after the UOF [use of force] on October 17, 2013; therefore he did not have a current medical order for a cane at the time of the UOF." *Id.* ¶ 5; *see also* ECF 55-11.[13]

### STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the

---

[12] Merling has since been promoted to the rank of lieutenant.

[13] Defendants do not explain why Calhoun-El's one-year medical order for a cane issued at NBCI on March 23, 2013, expired or became invalid upon his transfer to WCI.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott* 550 U.S. at 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50.  This Court is also mindful that because Calhoun-El is proceeding *pro se*, his pleadings must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

### A. MOTION TO AMEND

Preliminarily, this Court must consider Calhoun-El's Motion to Amend the Complaint to add six corrections officers, Benson, Turner, Raines, Payton, Niland, Brinegar, and Neilson as defendants.  Calhoun-El states that he learned the names of these officers when he reviewed the attachments filed with Defendants' Renewed Motion for Summary Judgment. (ECF 61, 62).

Under Fed.R.Civ.P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." *See Scott v. Family Dollar Stores*, Inc., 733 F.3d 105, 118 (4th Cir. 2013), cert. denied, ____ U.S. ____, 134 S.Ct. 2871 (2014); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). "Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason 'such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir.2009) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

As noted, Calhoun-El maintains he learned of the officers names upon reading the attachments filed with Defendants' Renewed Motion for Summary Judgment. There is no suggestion of bad faith or undue delay. Further, Defendants do not oppose Calhoun-El's Motion to Amend. Accordingly, the Motion to Amend will be granted.

## B. EXCESSIVE FORCE CLAIM

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Eighth Amendment analysis asks whether the prison officials "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* at 761. [14]

A prisoner must meet a heavy burden to satisfy the subjective component—that prison officials applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted), abrogated on other grounds by *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010). In determining whether a prison official has acted with

---

[14] Recently, in *Kingsley v. Hendrickson*, the Supreme Court held that a pretrial detainee bringing a claim for excessive force under the Fourteenth Amendment must meet an objective standard by showing "only that the force purposely or knowingly used against him was objectively unreasonable." _ U.S. _, 135 S.Ct. 2466, 2472–74 (2015). *Kingsley* did not overrule cases applying a subjective standard to Eighth Amendment excessive force claims by convicted prisoners. *Id.* at 2476; *see also Davis v. White*, 794 F.3d 1008, 1012 n. 1 (8th Cir. 2015) (noting same).

"wantonness in the infliction of pain," *Whitley*, 475 U.S. at 322, courts should consider the necessity for the application of force; the relationship between the need for force and the amount of force used; the extent of the injury inflicted; the extent of the threat to the safety of the staff and other prisoners, as reasonably perceived by prison officials based on the facts known to them at the time; and the efforts taken by the officials to temper the severity of the force. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). As to the objective component, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated[,] whether or not significant injury is evident." *Wilkins*, 130 S. Ct. at 1178 (internal quotation marks omitted).

Absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins*, 559 U.S. 34, 36–37 (2010). It is "the nature of force" used by the correctional officer, "rather than the extent of the [prison inmate's] injury, [that] is the relevant inquiry" in an Eighth Amendment claim. *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013). "'[T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation,' " but if force is applied "'maliciously and sadistically,'" liability is not avoided simply because the prisoner "had the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 37–38 (quoting *Hudson*, 503 U.S. at 9). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action" for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment, however. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Thus, in an excessive force case, "the 'core judicial inquiry' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7).

Against this background, this Court also recognizes that prison officials are charged with balancing competing governmental interests, including maintaining order; protecting correctional officers, prison staff and inmates; and ensuring inmates' rights to be free from cruel and unusual punishment. *See e.g. Whitley*, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. *See Hudson*, 503 U.S. at 6.

Use of pepper spray on a docile prisoner may qualify as excessive force. *See Iko v. Shreve*, 535 F.3d 225, 239-40 (4th Cir. 2008) (finding genuine issue of material fact when prison guard deployed several bursts of pepper spray on docile prisoner); *Williams*, 77 F.3d at 763 (noting "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents, in quantities greater than necessary or for the sole purpose of infliction of pain" (internal quotation marks omitted)).

Calhoun-El disputes Defendants' renewed request for summary judgment with affidavits. Carleton Harris and Kevin Mosby corroborate Calhoun-El's claim that Officer Wilson used pepper spray without issuing a direct order to turn around for handcuffing. Neither Harris nor Mosby witnessed Calhoun-El move toward Wilson or try to grab his arm. Mosby states he could see another burst of pepper spray coming from the area where corrections staff were carrying Calhoun-El after the first incident.

There are genuine issues of material fact as to whether a violation of constitutional moment took place. The facts indicate that Officer Wilson directed Calhoun-El to turn around so that he could be handcuffed him from behind. It is unclear whether Calhoun-El was wearing a three-piece restraint at that time, and if he was, whether one arm was free to allow him to hold

his cane, or whether his restraints had been removed completely when he was instructed to turn around for handcuffing by Wilson. It is also unclear whether Wilson was aware that Calhoun-El had a medical order for use of a cane, whether Officer Wilson gave Calhoun-El a direct order thereafter to turn around and warned Calhoun-El of the consequences of failing to comply, and whether Calhoun-El then advanced towards Wilson and attempted to grab his arm. The affidavits of Officers Wilson and Turner are directly disputed by those of Calhoun-El,[15] Harris, and Mosby. Resolving these questions of fact is necessary to discern whether Wilson deployed the pepper spray in good faith to maintain discipline and security, and whether Officer Wilson believed he, other staff or other inmates were at risk under the circumstances. Clearly these questions present genuine issues of material fact.

As to the second and third incidents alleged by Calhoun-El, it bears noting that although Calhoun-El claims he informed the IIU investigator about these incidents and included his allegations in his Administrative Remedy Procedure request, ARP # 1207-13, which was dismissed based on the ongoing IIU investigation, the IIU report focused solely on the first incident and does not contain any findings concerning the alleged subsequent beatings. (ECF 17-6, pp. 9; ECF 17-14, pp. 1-4; ECF 41, p. 21). Calhoun-El maintains that he asked the investigator to interview unnamed witnesses who were in the lobby and C Tier Day Room, yet no mention of this is made in the IIU report. *Id.* Calhoun-El's unscheduled visit to the medical unit on August 10, 2013, for "vitals" suggests the occurrence of another incident.

Summary judgment is precluded where, as here, the parties offer differing versions of events in affidavits or pleadings sworn under penalty of perjury, and the differences involved genuine issues of material facts. Credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions. *See Anderson,* 477 U.S. at 250.

---

[15] Calhoun-El filed his opposition to Defendants' first dispositive motion in the form of an affidavit. (ECF 41).

Whether Calhoun-El was administered pepper spray and later assaulted as he alleged remains in dispute, as do the facts surrounding the need for force, the amount of force used, and whether the application of force used to subdue plaintiff was tempered. Such factual issues can "be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See Anderson,* 477 U.S. at 254. Accordingly, summary judgment is inappropriate and will be denied.

## CONCLUSION

For the reasons discussed above, this case presents genuine disputes of material fact whether Defendants used excessive force against Calhoun-El in violation of his rights under the Eighth Amendment. Accordingly Defendants' Renewed Motion for Summary Judgment will be denied by Order to follow. Counsel will be appointed to represent Calhoun-El.

October 16, 2015

RICHARD D. BENNET
UNITED STATES DISTRICT JUDGE